[No. 8233.    En Banc.    May 28, 1910.]

THE STATE OF WASHINGTON, on the Relation of Thomas Burke et al., Respondent, v. BOARD OF COMMISSIONERS OF KING COUNTY et al., Appellants.[1]

CANALS—ESTABLISHMENT—SPECIAL ASSESSMENTS—STATUTES—CONSTRUCTION—INTENT OF FEDERAL GOVERNMENT. The resolutions and acts of Congress appropriating money to pay the cost of making investigations and preliminary surveys for the construction of the "Lake Washington Canal", upon the state's securing a right of way therefor for the benefit of the United States (which was done), with the proviso that nothing therein contained shall be construed as an adoption of the project, did not manifest any intention on the part of the United States to construct or operate the canal within a reasonable time, or at all, within the meaning of Rem. & Bal. Code, § 8148, authorizing local assessments by the county commissioners upon the property specially benefited for the purpose of paying the cost, in whole or in part, of constructing the Lake Washington

[1]Reported in 109 Pac. 350.

Canal, "whenever the government of the United States is intending
or proposing the construction or operation" of such canal (Gose,
Crow, and Fullerton, JJ., dissenting).

Appeal from a judgment of the superior court for King
county, Huneke, J., entered May 11, 1909, in favor of the
plaintiff, after a trial on the merits before the court without
a jury, in an action to compel the equalization of an assess-
ment roll and the levying of a special assessment upon prop-
erty benefited by a local improvement. Reversed.

*George F. Vanderveer, Bogle & Spooner,* and *Peters &
Powell,* for appellants.

*Roger S. Greene, Harold Preston, H. A. P. Myers,* and
*Corwin S. Shank,* for respondent.

MOUNT, J.—This appeal is prosecuted from a judgment
in mandamus, requiring the county commissioners of King
county to equalize a local improvement assessment roll, and
levy a special assessment to raise money for the construction
of what is known as the Lake Washington canal. The roll
was prepared by the county commissioners, acting under
chapter 236, Laws of 1907, page 582 (Rem. & Bal. Code,
§ 8148 *et seq.*). By this act the legislature authorized the
levy of a local assessment upon property specially benefited,
to defray the expenses, in whole or in part, of a canal when-
ever the government of the United States is intending or
proposing the construction or operation of such canal, and
whenever the county commissioners shall judge the same to
be for the general benefit and welfare of the people of the
county. The act provides that proceedings shall be initi-
ated by the filing of a freeholders' petition with the board
of county commissioners, and that, when the board has ad-
judged that the improvement in question is for the general
benefit and welfare of the people of the county, the board
shall thereupon apply to the person who then shall be judge
of the United States district court to name eleven commis-

sioners, to be known as the "River and Harbor Improve-
ment Commission of .......... County." It is made the
duty of the improvement commission to define and establish
an assessment district in the county, comprising all the tax-
able real estate especially benefited by the improvement, and
to apportion and assess benefits against each tract of land,
and to make an assessment roll and certify the same to the
board of county commissioners. The act further requires
that, after the return of the assessment roll to the board of
county commissioners, they shall make an order setting a
day for the hearing of objections to the roll, and shall cause
notice of such hearing to be given, and that upon a hearing
the board shall sit as a board of equalization and equalize
the roll.

On the 12th day of June, 1907, a freeholders' petition was
filed with the board of county commissioners, praying the
county commissioners to take the steps prescribed by the
act for the creation of an assessment district, and the levy-
ing of an assessment of $1,075,000 to defray a portion of
the expenses of constructing a canal, commonly known as
the Lake Washington canal, connecting the waters of Puget
Sound through Lake Union with the waters of Lake Wash-
ington. The petition states that the expense of the im-
provement will be more than $3,000,000. Pursuant to this
petition, the board of county commissioners, on the 18th
day of June, 1907, entered an order adjudging that such
improvement was for the general benefit and welfare of the
people of the county; that such assessment should be levied;
that the cost of the canal would be $3,000,000, more or
less, and that the assessment should be in the sum of $1,-
075,000, for the purpose of paying the expense of such
improvement to that extent. On the 19th day of June, 1907,
the board notified Honorable C. H. Hanford, judge of the
United States district court for the western division of
Washington, to name the improvement commissioners as

required by the act, and on the 24th day of the same month Judge Hanford named the commissioners and filed a list thereof with the board of county commissioners; and on the following day the board approved the selection. The commission so constituted made and defined the assessment district, prepared an assessment roll, and on the 29th day of May, 1908, filed the same with the board of county commissioners, who thereupon gave the required notice to the owners of the property appearing upon the assessment roll, and pursuant to such notice, many objections were filed. Upon the day set for the hearing of the objections, viz., the 24th day of September, 1908, the hearing was had, and after an adjournment until the 28th day of September, the board refused to proceed further with the work of equalization and adopted the following resolution:

"*Be it resolved* by the board of county commissioners of King county that the action of said board taken at a meeting held on the 24th day of June, 1907, wherein and whereby said board, on an *ex parte* hearing, made a finding that the government of the United States was intending and proposing the construction and operation of a canal connecting the waters of Puget Sound with Lake Washington, be and the same is hereby revoked and rescinded, said board, upon sufficient proof being now of the opinion, and having been advised, that there is no record in the Acts of Congress of a declaration of such intention on the part of the United States government.

"*Be it resolved* by the board of county commissioners of King county that it refuses and it hereby does refuse to sit as a board of equalization upon the assessment roll presented to it by the river and harbor improvement commission of King county, on the ground and for the reason that said board has no authority in law to equalize said roll, and that the law of 1907 in regard to the creation of said board of equalization is unconstitutional and void."

Thereupon the relators instituted this action, to compel the board of commissioners to proceed to equalize the roll and to levy the assessment. The defendants filed their answer, denying, among other things, that the government of

the United States is, or was, intending or proposing the construction or operation of the canal in question; denying the right or power of the court to control their action in the premises; and alleging the unconstitutionality of the act under which the proceedings were taken. A trial was had upon the merits. A judgment was entered in favor of the plaintiff as prayed for, and from that judgment this appeal is prosecuted.

The appellants rely upon three grounds for reversal of the judgment of the lower court, as follows:  (1) That there has not been at any time since the passage of the act of 1907, and is not now, any intention or proposal of the United States to construct or operate the canal within the meaning of the act, and that therefore any assessment now made would be premature and unauthorized; (2) that the superior court has by its judgment sought to compel these appellants as a board of county commissioners to do an act which rests entirely in their discretion and which is beyond the control of the court; and (3) that the statute under which the judgment of the lower court compels the commissioners to proceed is unconstitutional. Under the view we take of the first question presented, it will be unnecessary to discuss the other two.

The intention or proposal of the United States government to construct or operate the canal in question, if such exists, is disclosed by the record before us, in substance, as follows:  In the year 1890, Congress passed an act authorizing and directing the secretary of war to appoint a board of three officers of the corps of engineers of the United States army to select and survey the most feasible location and estimate the expense of construction of a ship canal to connect the waters of Lakes Union, Washington and Samamish with Puget Sound, and appropriated the sum of $10,000 for that purpose. 51 Congress, 1st session, page 452; 27 Stats. at Large 452. In 1894 there was appropriated by Congress, in the river and harbor act, $25,000, "for dredg-

ing Salmon Bay, and the improvement of the waterway connecting the waters of Puget Sound at Salmon Bay with Lakes Union and Washington, by enlarging said waterway into a ship canal, with the necessary locks and appliances in connection therewith." The following proviso, however, was added:

"Provided, that no part of said amount shall be expended on the improvement of the waterway connecting the waters of Puget Sound with Lakes Union and Washington until the entire right of way and a release of all liability to adjacent property owners have been secured to the United States free of cost and to the satisfaction of the secretary of war." *53* Congress, *2d* session, page *360*; *28* Stats. at Large, *360*.

The sundry civil act of 1895 directed the secretary of war to expend from that appropriation the sum of $5,000 in making a definite survey and location of the improvement, and preparing a cadastral map showing each piece of property to be required to be deeded to the United States and from which a release should be required. The river and harbor act of 1896 carried a further appropriation of $150,000 for the purpose stated in the act of 1894, with the following phrase added: "Said canal to be constructed either by the Smiths Cove route or by the Shilshole Bay route, in the discretion of the secretary of war." 54th Congress, 1st session, page *234*; *29* Stats. at Large, *234*. In April, 1896, a joint resolution was passed by Congress (Id., page 471) directing the secretary of war to transmit to Congress the report of Captain Symons of the corps of engineers, upon the survey of the waterway connecting the waters of Puget Sound at Salmon Bay with Lakes Union and Washington, and also to submit an estimate of the cost of constructing said waterway on the route described in the report.

In 1895 the legislature passed an act (Laws 1895, page 3; Rem. & Bal. Code, § 901 *et seq.*), authorizing counties to condemn land,

"Whenever the government of the United States or of this state is intending or proposing the construction, operation, or maintenance of any public work . . . and such condemnation or appropriation will enable the county to aid, promote, facilitate or prepare for any such construction, operation, maintenance, or expenditure by either or both such governments, or to fulfill or dispose of any condition upon which such construction, operation, maintenance, or expenditure is by law or for any cause contingent."

The act provides for a tax levy to create a fund to defray the cost of such condemnation. The constitutionality of this act was attacked in the case of *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817, a proceeding instituted against the county to restrain the prosecution of said condemnation proceedings; the act was sustained, and in the course of the decision it is pointed out by this court that the funds of the county can lawfully be expended for paying the condemnation awards, notwithstanding the fact that the canal is to belong to, and be under the control of, the general government; in which connection it is said to be "immaterial whether the United States or the county prosecutes the enterprise, or whether they do so jointly." Pursuant to the provisions of this last named act, King county, by suit and otherwise, acquired the title to the lands over which the proposed canal was to be built, and in August, 1899, King county made a deed of conveyance of the lands, acquired by the condemnation proceedings and otherwise, to the United States government. This deed was recorded June 23, 1900, at the request of the government engineer in charge of the Puget Sound district. The aggregate amount of the awards in condemnation was $255,642, all of which was paid by the county of King out of the tax levy made for that purpose. The deed recites the acts of Congress of 1894 and 1895, the passage of the act of the legislature of 1895, the making of the definite survey and location of the improvement by the engineer corps under the secretary of war, and their preparation of the cadastral

map then on file in the office of the secretary of war. It further recites the condemnation proceedings and decrees therein, and the resolution of the board of county commissioners authorizing the conveyance to be made. These appropriation proceedings and this deed vested in the government of the United States the entire right of way for the canal, and the release of damages from all owners of property abutting upon the bay and lakes. In April, 1900, the state of Washington, in order to further facilitate the building of the canal, deeded to the government certain tide lands adjacent to the town of Ballard, the same being a part of the proposed right of way of the canal.

It is conceded by respondent that the Congressional appropriations up to this date are for dredging Salmon Bay, and the improvement of the waterway connecting Puget Sound at Salmon Bay with Lakes Union and Washington by enlarging the waterway into a ship canal, speaking of the two as one. The dredging of Salmon Bay would be in part the dredging of part of the canal. It is also conceded that the dredging of Salmon Bay was a proper government improvement, even though the ship canal into Lakes Union and Washington should never be constructed. In 1902 Congress passed the following in the river and harbor act:

"Improving waterway connecting Puget Sound with Lakes Union and Washington, Washington: Continuing improvement, one hundred and sixty thousand dollars. Provided, That this appropriation, together with the unexpended balance to the credit of said improvement, shall be expended in securing by dredging a low-water channel ten feet in depth from Shilshole Bay through Salmon Bay to the wharves at Ballard. Provided, further, that a board of engineers shall be appointed by the secretary of war, who shall make such surveys, examinations, and investigations as may be required to determine the feasibility and advisability of constructing a canal, with necessary locks and dams, connecting Puget Sound with Lakes Union and Washington, of sufficient width and depth to accommodate the largest commercial and naval vessels, and said board shall prepare and

report plans and estimates of the cost thereof. Said board shall also examine the route for a similar canal connecting Elliott Bay with Lakes Washington and Union, with a view to determine the feasibility of such route, and shall invite proposals from the Seattle and Lake Washington Waterway Company for the construction of a similar canal over said route connecting Elliott Bay with Lake Washington, and similar proposals for connecting Elliott Bay with Lake Union through Lake Washington, said proposals to specify the time for the completion of each project, and all rights and privileges to be reserved by said company. Said board shall also report upon the relative advantages of all proposed routes. Nothing herein shall be construed as the adoption of any project for the construction of a waterway connecting Puget Sound with Lakes Union and Washington. Said board shall make its report, as above provided for, to the next session of Congress." 57th Congress, 1st session, page 347; 32 Stats. at Large, 347.

In February, 1901 (Laws 1901, page 7; Rem. & Bal. Code, § 6864), the legislature of this state passed an act entitled:

"An act relative to and in aid of the construction, maintenance and operation by the United States of America of a ship canal, with proper locks and appurtenances to connect the waters of Lakes Union and Washington, in King county, with Puget Sound, and declaring an emergency," whereby the state granted to the United States the right to place, construct, maintain, and operate such ship canal and appurtenances upon, along, through, and over any and all lands belonging to and waters of this state in King county, within such limits as should be defined by the plans and specifications for such improvement as the same shall be approved by the United States secretary of war, together with the right to raise the waters of Salmon Bay and lower the waters of Lake Washington in prosecution of such improvement; and the state thereby released the United States from all liability for damages to the state, its successors and assigns, that might arise from such lowering or raising of waters or otherwise from such improvement.

In 1905 (58th Congress, 3d session, page 1144; 33 Stats. at Large, 1144) Congress appropriated $125,000 in the following language:

"Improving the waterway connecting Puget Sound with Lakes Union and Washington, Washington. Continuing improvement, one hundred and twenty-five thousand dollars. Provided, that this appropriation, together with the unexpended balance to the credit of said improvement, shall be expended in securing by dredging a deeper and wider low-water channel from Shilshole Bay through Salmon Bay to the wharves at Ballard. Nothing herein shall be construed as the adoption of any project for the construction of the waterway connecting Puget Sound with Lakes Union and Washington."

In 1906 Congress passed an act (59th Congress, 1st session, page 231; 34 Stats. at Large, 231), entitled: "An act authorizing James A. Moore or his assigns to construct a canal along the government right of way connecting the waters of Puget Sound with Lake Washington." This act provided that it should be lawful for James A. Moore or his assigns to construct a ship canal not less than twenty-five feet in depth and with a bottom width of not less than sixty feet, with a suitable timber lock of not less than six hundred feet in length and seventy-two feet in width, along the government right of way connecting the waters of Puget Sound, in the state of Washington, with Lake Washington, subject always to the provisions and requirements of the act, and to such conditions and stipulations as might be imposed by the chief of engineers and the secretary of war, and that the construction of such canal by James A. Moore should not be made or commenced until after plans and specifications therefor had been submitted to the secretary of war for his approval, and that such work should be subject to the inspection of the secretary of war, and that it should not be lawful to deviate from such plans either before or after the completion of the structure. It also provided that the work should be constructed by James A.

Moore and his assigns free of cost to the United States, and should remain the property of the United States, and that said Moore and his assigns should operate the same for a period of three years. The act further provided that it should be null and void unless the canal was commenced within one year and completed within three years. Thereafter Congress made an appropriation (59th Congress, 2d session, page 1108; 34 Stats. at Large, 1108), as follows:

"Improving the waterway connecting Puget Sound with Lakes Union and Washington, Washington: For maintenance of improvement, ten thousand dollars; and the Secretary of War may make a survey and estimate the cost of such waterway or canal with one lock, with a view to the construction of the same, in conjunction with the county authorities of King County, or other agency, of sufficient size to accommodate the largest commercial or naval vessels afloat; or, if deemed more advisable, with a view to the construction of a canal of less dimensions, and to submit dimensions and estimate of cost of same, together with a report upon what portion of said work will be done or contribution to be made by said county or other agency. And the provisions of the act approved June eleventh, nineteen hundred and six, authorizing James A. Moore, or his assigns, to construct a canal, with suitable timber lock, are hereby so modified as to permit the said James A. Moore, or his assigns, subject to the conditions and stipulations of the act, to excavate a channel seventy-five feet wide at the bottom and twenty-five feet deep at mean low water from deep water in Puget Sound at the mouth of Salmon Bay to deep water in Lake Washington, in lieu of constructing the canal and timber lock specified in the said act, the location of the said channel and work of excavation to be subject to the direction of the Secretary of War, and the plans and order of work to be subject to his approval before beginning and when completed and accepted by the Secretary of War, the channel to be and remain a free public waterway of the United States."

In 1907 (Laws 1907, page 498, ch. 216; Rem. & Bal. Code, § 6865 *et seq.*), the state legislature passed an act entitled:

"An act granting to the United States of America a right of way for Lake Washington canal in King county, through lands and shore lands belonging to the state of Washington or the University of Washington, and declaring an emergency."

The foregoing appears to be all the legislation, other than the act here under consideration, upon the subject up to the time of the action of the board of county commissioners had in September, 1908, except that the state legislature has passed an act authorizing the bonding of counties for said purposes, which was held unconstitutional by this court. In all this legislation we fail to find any act or declaration by the national government which discloses any intention or proposal on the part of the government to construct or operate this canal, now, or within a reasonable time in the future, or at all. It is true that, in the year 1894, an appropriation was made for the improvement of the waterway connecting Puget Sound with Lakes Union and Washington, by enlarging said waterway into a ship canal; provided the entire right of way was secured to the United States free of cost. Subsequently the entire right of way was, in 1899, conveyed to the United States, but no money is shown to have been appropriated or used in the improvement of this waterway, except in "Shilshole Bay through Salmon Bay to the wharves of Ballard," which waters are a part of Puget Sound, and the improvement of these waters is conceded to be a proper government improvement even though the ship canal into Lakes Union and Washington should never be constructed. Since the right of way was deeded to the government more than ten years ago, each appropriation of money to be used in the vicinity of said canal, or which might be used upon the improvement thereof since that time, has contained substantially this provision "Nothing herein shall be construed as the adoption of any project for the construction of a waterway connecting Puget Sound with Lakes Union and Washington"; thus

showing that the government is neither proposing nor intending to construct or operate the canal. The only act tending to show such intention is the acceptance of the right of the right of way, but the effect of this acceptance, as showing an intention or proposal to construct the canal, is materially lessened by lapse of time and by inactivity, if it is not entirely destroyed by the declaration in acts appropriating money since that time, that "nothing herein shall be construed as the adoption of any project for the construction of the waterway connecting Puget Sound with Lakes Union and Washington." It is argued by respondent that the projects there referred to are different proposed locations of the canal, but it seems clear to us that the object of the declaration was to avoid any inferences that the government intended to construct the canal, or to ratify any act done from which it might be inferred that the government intended or proposed to construct the canal.

It is manifest from the record that the people of King county have expended much money upon the enterprise, and have earnestly labored to induce the government to undertake the work; but it is also apparent from the acts of Congress above referred to that, while the government has placed no obstacle in the way of the work by King county or private citizens, it has manifested no intention to construct or operate the canal within a reasonable time. The county commissioners were, therefore, without authority under the act of 1907 to create the assessment district, or to levy a special assessment in aid of the canal.

The judgment of the lower court must therefore be reversed and the cause dismissed. It is so ordered.

RUDKIN, C. J., PARKER, DUNBAR, and CHADWICK, JJ., concur.

GOSE, J. (dissenting)—In view of the public nature of the question at issue, I feel constrained to briefly state my reasons for dissenting. The facts recited in the majority

opinion disclose, that the Federal government has appropriated $480,000 for "improving the waterway connecting Puget Sound with Lakes Union and Washington"; that in 1899, it accepted a deed from King county, investing it with the title to a right of way for the canal, and that it has since that date accepted from the state a grant of the right to construct and operate the canal over any state land in King county; that prior to receiving these grants from the state and county, the appropriation of 1894 was made, on the condition that no part of it should be expended "on the improvement of the waterway connecting Puget Sound with Lakes Union and Washington, until the entire right of way and a release of all liability to adjacent property owners has been secured to the United States free from cost"; that in 1906, Congress passed an act giving authority to James A. Moore to construct a ship canal "along the government right of way connecting the waters of Puget Sound . . . with Lake Washington." It will be observed that the Federal government has held title to the right of way granted to it by King county for about eleven years, and to the privileges granted by the state for nine years, and that during this period it has from time to time made appropriations for the canal. I do not regard the statement that "nothing herein shall be construed as the adoption of any project for the construction of a waterway connecting Puget Sound with Lakes Union and Washington," as militating against the view that the government is intending or proposing the construction of the canal. I think the meaning of this clause is, that the government is left free and untrammeled to adopt such location or route, or the one or two lock system, as its interests may require.

It is stated by the majority that the effect of the acceptance of the right of way as indicative of the intention of the government is materially lessened "by lapse of time and inactivity." It must be admitted that the government has not proceeded with the celerity desired by the people of the

state. The fact remains, however, that it continues to hold and assert title to property of great value, and that it continues to appropriate funds for the execution of the enterprise. Moreover, we are advised by the press dispatches that a considerable appropriation will probably be made at this session of the Congress. I think that the precise contingency contemplated by the legislature exists, and that the recited facts irresistibly lead to the conclusion that the government is intending and proposing the construction of the canal. If the legislature had intended that the proposal should be expressed in words, or that a fixed amount should be appropriated before the levy of a local assessment, it would no doubt have said so in plain terms.

In view of the fact that the second and third grounds relied upon for a reversal of the judgment are not discussed in the majority opinion, I will not comment upon them further than to say that I do not think they offer any obstacle to the relief granted by the trial court. The respondent only asks that the appellants proceed to equalize the assessment so that the project which they initiated may continue to completion. The appellants have already adjudged that the improvement was for the general welfare. Under a similar act, King county appropriated the private property of its citizens, levied and collected a tax of $255,642, for the purpose of paying for such property, and then, as we have seen, conveyed the property to the Federal government. Neither the county nor its officers should now be heard to assert that the acquisition of this property, or the collection of the tax, was illegal. The act under which the county appropriated the property was held constitutional in *Lancey v. King County*, 15 Wash. 9, 45 Pac. 645, 34 L. R. A. 817.

As I view the question, the good faith of the county and the Federal government alike are pledged to the construction of the canal. I therefore dissent.

Crow and Fullerton, JJ., concur with Gose, J.