[No. 11214.   Department Two.   November 1, 1913.]

OSBORNE, TREMPER & COMPANY, INCORPORATED, *Appellant,*
v. KING COUNTY, *Respondent.*[1]

COUNTIES — IMPROVEMENTS — CANALS — ESTABLISHMENT— GOVERN-MENT AID—AUTHORITY OF OFFICERS—CONTRACTS—VALIDITY.  A county river and harbor commission can have no authority to make a contract for the preparation of an assessment roll in aid of a government canal, pursuant to Rem. & Bal. Code, § 8148 *et seq.,* unless there was the initial power and authority to form the district and levy the assessment; and where the contract was void *ab initio* for want of power on the part of the officers to bind the municipality, there can be no estoppel against the municipality to defeat payment by reason of the acceptance of benefits conferred by the contract.

SAME — IMPROVEMENTS — CANALS — ESTABLISHMENT — CONDITIONS PRECEDENT—GOVERNMENT AID—INTENT OF FEDERAL GOVERNMENT.  Under Rem. & Bal. Code, § 8148, authorizing a county to levy local assessments upon the property benefited in aid of the construction of a government canal or harbor improvement in the county, whenever the Federal government "is intending or proposing the construction" thereof, the power of the county to create the district or initiate the proceedings is dependent upon the antecedent intention of the government, which can only be shown by an act of Congress; in the absence of which, the proceedings by the county are void *ab initio,* and hence a contract by a river and harbor commission appointed without such antecedent authority is unenforceable.

SAME—CURATIVE ACT—RATIFICATION.  Where proceedings to levy assessments in aid of the construction of a government canal under Rem. & Bal. Code, § 8148, were void *ab initio,* for want of an act of Congress declaring the intention of the government to construct the canal, a subsequent act of Congress declaring the necessary in-

[1]Reported in 136 Pac. 138.

tention cannot operate as a curative act or validate contracts, there-tofore made, which it was beyond the power of the municipality to ratify.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered February 4, 1913, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Corwin S. Shank* and *Horatio C. Belt,* for appellant.

*John F. Murphy* and *Robert H. Evans,* for respondent.

Ellis, J.—This action was brought by the plaintiff against King county to recover the sum of $22,495.30, with interest from February 8, 1908, for services performed under a contract with the river and harbor improvement commission of King county, the history of which is as follows: In May, 1907, a large number of property holders of King county filed a petition with the board of county commissioners of that county, pursuant to the provisions of chapter 236, Laws of 1907, p. 582 (Rem. & Bal. Code, § 8148 *et seq.;* P. C. 437 § 263), asking for the appointment of a river and harbor improvement commission. On June 18, 1907, the county commissioners, by an *ex parte* adjudication, found that the United States was intending and proposing to construct the Lake Washington canal, and that it would be for the general welfare of the people of King county to construct the canal, and ordered that an assessment be levied for the purpose. Accordingly, June 19, the board made application to Honorable C. H. Hanford, judge of the United States district court, for the appointment of a "River and Harbor Improvement Commission." Thereupon, Judge Hanford appointed eleven men to constitute such commission.

On August 7, 1907, the first contract was entered into between the commission and the plaintiff. That contract was superseded by another of September 25, 1907, in which, in consideration of the promise of $1,000 additional compensation, the plaintiff agreed to the substitution. This substi-

tuted contract is the basis of the present action.  The river
and harbor commission is therein designated as the first party,
and the plaintiff as the second party.  The provisions, so far
as material to this inquiry are as follows:

"The second party will make and deliver to the first party
a correct list, together with a duplicate list of descriptions of
all pieces and parcels of real property within the limits of
the assessment district to be created by first party, and
of the reputed owners and the assessed valuations, respective-
ly, of each such piece or parcel, at ten (10) cents per de-
scription, payment to be made from the assessment fund here-
inafter mentioned when the same shall become available.

"The assessment fund intended in the foregoing stipulation
is the assessment fund to be raised by an assessment upon the
pieces and parcels of real property in said assessment dis-
trict, under the provisions of the act of the legislature of the
state of Washington in such case made and provided."

The plaintiff, pursuant to this contract, prepared an as-
sessment roll comprising 214,953 descriptions, which roll
was deposited with the county commissioners by the improve-
ment commission on May 27, 1908.  On the next day, the
board of county commissioners entered in their minutes an
acceptance of the roll.  On September 28, 1908, the county
commissioners passed resolutions rescinding all of their former
acts in reference to the appointment of the commission, and
refusing to act as a board of equalization on the rolls, the
resolution being as follows:

"Be it resolved by the board of county commissioners of
King county that the action of said board taken at a meeting
held on the 24th day of June, 1907, wherein and whereby
said board, on an *ex parte* hearing, made a finding that the
government of the United States was intending and pro-
posing the construction and operation of a canal connecting
the waters of Puget Sound with Lake Washington, be, and
the same is, hereby revoked and rescinded, said board, upon
sufficient proof, being now of the opinion, and having been ad-
vised, that there is no record in the acts of Congress of a
declaration of such intention on the part of the United States
government.

"Be it resolved by the board of county commissioners of King county that it refuses and it hereby does refuse to sit as a board of equalization upon the assessment roll presented to it by the river and harbor improvement commission of King county, on the ground and for the reason that said board has no authority in law to equalize said roll, and that the law of 1907, in regard to the creation of said board of equalization, is unconstitutional and void."

On appeal from a judgment in mandamus requiring the county commissioners to equalize the roll and levy the assessment, this court found that the appointment of the river and harbor commission was premature, holding that the county commissioners were therefore without authority, under the act of 1907, to create an assessment district or to levy special assessments in aid of the construction of the canal, because the United States government had then declared no intention to construct or operate the canal. *State ex rel. Burke v. Board of County Com'rs*, 58 Wash. 511, 109 Pac. 350.

Nothing further has ever been done toward the creation of a district or the levying of an assessment for the purpose of aiding in the construction of the canal, and there is no fund such as that specified in the contract available for the purpose of paying the plaintiff for its work in preparing the assessment rolls. These rolls have remained in the possession of the county commissioners, but have never been used for any purpose. On August 30, 1911, the plaintiff presented a claim against the defendant for the amount claimed on the contract, which was rejected by the county commissioners. There is no serious dispute on these facts or the further fact that, subsequent to the appointment of the river and harbor commission, and subsequent to the letting of the contract and making of the rolls, certain acts of Congress have been passed indicating an intention of the general government to build the canal.

It is admitted that one member of the river and harbor improvement commission was a stockholder, trustee, and

officer of the plaintiff company, but the evidence shows that he called the attention of the other members of the commission to that fact and refused to take part in the discussion when the matter of letting the contract was under consideration, and refused to vote or take part in the proceedings leading to the award of the contract to the plaintiff. It is also admitted that the county commissioners, after receiving the roll, sent out notices of a hearing thereon, and spent from the general funds of the county something over $5,750 in clerk hire, postage, printing and the like, preparatory to the equalization of the rolls, before revoking their former action and finally refusing to proceed with the assessment.

The cause was tried to the court, which made findings of fact in substance as follows: That on June 12, 1907, one hundred or more freeholders of King county, possessing property of the necessary amount and valuation, filed a petition with the county commissioners, praying for the appointment of a river and harbor improvement commission; that the county commissioners requested Judge Hanford of the United States district court to appoint such a commission, which he did; that the commission so appointed signed the first contract with the plaintiff, and, on September 25, entered into the substituted contract; that the plaintiff, in accordance with that contract, prepared the assessment rolls, consisting of 214,953 separate descriptions of property to be included within the assessment district, and on May 9, 1908, the roll was presented to the board of county commissioners and left in its possession; that the board never approved the contract with the plaintiff, nor authorized the commission to enter into it and had no knowledge of the same until the roll was deposited with, and placed in the possession of the board; that, by the terms of the contract, the plaintiff was to receive its pay "from the assessment fund hereinafter mentioned when same shall become available;" that, by the express provisions of the contract, "the assessment fund intended in the foregoing stipulation is the assessment fund to be raised by an

assessment upon the pieces and parcels of real property in
said assessment district, under the provisions of the act of
the legislature of the state of Washington in such cases made
and provided for;" that the plaintiff was to receive 10 cents
a description and $1,000 for its consent to the modification
of the first contract; that the commission has never since that
time acted, but thereafter dissolved, and that the project of
creating the assessment district has been abandoned by the
county; that no attempt has been made, since the resolution
of the county commissioners refusing to act as a board of
equalization, to equalize the roll or do anything toward creat-
ing the district or building the canal; that such roll has re-
mained since that time in the custody of the county, and has
never been used by, or been of any benefit to, the county; that
the plaintiff has never attempted to recover the roll from the
board or sought to compel the board to equalize the roll, or
collect any money upon the property, and that there is no
money in the fund referred to in the contracts. The court
expressly declined to make findings as to whether or not the
government was intending to construct the canal, but left
that question for the decision by this court in case of an
appeal. From these findings, the court made conclusions of
law as follows:

"That owing to the provisions of the contract of Septem-
ber 25, 1907  . . .  the plaintiff is entitled to receive its
pay out of the special fund levied and collected from an as-
sessment upon the property specially benefited and included
within said assessment district; that the plaintiff is not en-
titled to recover a general judgment against King county
for the work done."

The court expressly declined to enter any conclusions of
law as to whether or not the defendant established a defense
based upon the contention that, at the time the petition was
filed, the government was not intending to construct the canal
and that the proceedings were, therefore, void *ab initio*. Upon
these findings and conclusions, the court adjudged that the

plaintiff was not entitled to any recovery, and that the defendant recover its costs. From that judgment, the plaintiff prosecutes this appeal.

The facts being practically conceded, the case presents three questions of law, the answer to some, or all of which must be determinative of the rights of the parties. (1) Can the appellant, having contracted to take its pay out of the special assessment fund, maintain an action against King county for a judgment payable out of its general fund? (2) Did the act of 1907 authorize the appointment of a river and harbor improvement commission until Congress had signified its intention to construct the canal; and, if not, was the contract void *ab initio* in all of its parts? (3) Was the contract, in any event, void as against public policy because a member of the commission was a stockholder, trustee and officer of the appellant company at the time the contract was made?

I. The appellant contends that, under the act of 1907 (Rem. & Bal. Code, § 8148 *et seq.*; P. C. 437 § 263), the expenses to be incurred in establishing the improvement district and in levying the assessment are made payable only out of the general fund of the county; that the contract, in so far as it provided for payment out of the assessment fund, was founded on a mutual mistake of the parties as to the legal source of payment, and that, notwithstanding the stipulation for payment from a special fund, payment from the fund legally applicable can be enforced.

It is obvious that this contention can only be sustained upon an initial assumption that the contract was valid and within the power of the county, through its authorized agents, to make. Even assuming that the act of 1907 can be construed as requiring the payment of the initial expense looking to the formation of the district and levying of the assessment out of the general fund alone, the appellant's position would be sound only if the county commissioners, at the time of making the contract, possessed the power and authority to form a district and levy an assessment to pay for the canal.

No case cited by the appellant goes further than to hold that, where there exists full power and authority on the part of the officers or agents of a municipal or quasi municipal corporation to make a contract for services or property, and to agree to pay therefor in some manner or out of some fund, payment is not excused because of a stipulation in the contract to accept payment in an illegal manner or from a fund not legally applicable to payment for such services or property as contemplated by the contract. In such a case, there being the initial power to make a valid contract, the contract, when made, raises an obligation to pay in some manner or from some fund.

In *Hitchcock v. Galveston*, 96 U. S. 341, the plaintiff agreed to construct certain sidewalks for the defendant and take its pay in "Galveston City Bonds for Sidewalk Improvement, at par." It developed that the city could not legally issue such bonds, and it thereupon sought to cancel the contract and avoid payment for the work. The court held that, inasmuch as the city had power to make the improvement and to contract for its construction, the fact that the contractor agreed to take bonds which the city had no power to issue in payment did not defeat the contract nor relieve the city from its obligation to pay. The court said: (see opinion, p. 350.)

"They [the contractors] are not suing upon the bonds, and it is not necessary to their success that they should assert the validity of those instruments. It is enough for them that the city council have power to enter into a contract for the improvement of the sidewalks; that such contract was made with them; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have done and furnished; that for these things the city promised to pay; and that after having received the benefit of the contract, the city has broken it. It matters not that the promise was to pay in a manner not authorized by law."

The other cases cited by the appellant to this point all rest upon this same principle, that, where the power to make the contract and bind the city to pay from some fund existed, it cannot escape payment by reason of a stipulation to pay out of a fund not legally applicable. *Barber Asphalt Paving Co. v. Harrisburg*, 64 Fed. 283, 29 L. R. A. 401; *Miller v. Milwaukee*, 14 Wis. 699; *Bucroft v. Council Bluffs*, 63 Iowa 646, 19 N. W. 807; *Louisville v. Bitzer*, 115 Ky. 359, 73 S. W. 1115, 61 L. R. A. 434. The distinction is clearly recognized in *Barber Asphalt Paving Co. v. Harrisburg, supra*, by reference to the case of *Saxton v. St. Joseph*, 60 Mo. 153, which, it is said, "rests on the city's want of power to contract as it did." An examination of the *Saxton* case shows that it was there held that the city could not be made liable on a contract entered into by its council, the charter only authorizing contracts to be made by its mayor and council. It is also held that the contractor must be held to know the law and was chargeable with knowledge of the lack of the council's power to make the contract; hence, could not recover for the work.

It is a general rule that, where the officers making a contract for a municipality or quasi municipality have not the power or legal authority to make the contract at all, or to stipulate for payment out of any fund, the contract is void for lack of initial power to make it, and payment cannot be enforced. This court has repeatedly so held. *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *Chehalis County v. Hutcheson*, 21 Wash. 82, 57 Pac. 341, 75 Am. St. 818; *State v. Pullman*, 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836; *Paul v. Seattle*, 40 Wash. 294, 82 Pac. 601; *State ex rel. Spring Water Co. v. Monroe*, 40 Wash. 545, 82 Pac. 888; *Turner Inv. Co. v. Seattle*, 70 Wash. 201, 126 Pac. 426, 41 L. R. A. (N. S.) 781; *State ex rel. Craig v. Newport*, 70 Wash. 286, 126 Pac. 637. These authorities clearly establish the rule in this state that, where there is a want of power to make a contract or a want of power on the part of the body

of officers making the contract to bind the municipality, there can be no estoppel against the municipality to defeat payment by reason of accepting the benefit conferred by the contract.

"The appellant also contends that the town, having received the benefit of the contract, should be estopped to deny liability thereon. After a careful examination of the authorities, we held, in the case of *Turner Inv. Co. v. Seattle, ante* p. 201, 126 Pac. 426, that there could be no estoppel to deny liability where there was an absolute want of power to make the contract, and that the municipality could only be estopped to raise the defense of *ultra vires* where the officers had acted within their powers but had exercised these powers in an illegal way." *State ex rel. Craig v. Newport,* 70 Wash. 286, 126 Pac. 637.

"It is claimed, however, by the appellant, that, having received the benefits of the contract which the city entered into, it ought to be estopped from denying its validity; also that it had ratified the contract by receiving the benefits. It is well established that the power to ratify is coextensive only with the power to contract, and that an act which was illegal for want of authority on the part of the contracting powers cannot be ratified." *State v. Pullman,* 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836.

II. Addressing ourselves to the second question, it is at once manifest that, if there existed any power to make the contract in question, it must be traceable to the power to levy the assessment and to form an assessment district, and, as incidental thereto, to the power to initiate the appointment of the river and harbor improvement commission under the act of 1907. That act, so far as here material, reads as follows:

"Every county in this state is hereby authorized and empowered, by and through its county commissioners, whenever the government of the United States is intending or proposing the construction or operation of any river, lake, canal or harbor improvement, partly or wholly within such county, and whenever said board of county commissioners shall adjudge, upon a petition therefor filed with it and signed by at least one hundred (100) freeholders of said county who

each own realty of the assessed valuation of not less than five thousand dollars, situated within the limits of the improvement district sought to be created, that it is for the general benefit and welfare of the people of the county, that such river, lake, canal or harbor improvement be made and completed to define and establish an assessment district within such county and to levy an assessment upon so much of the taxable real estate of such county as shall be specially benefited by such improvement as hereinafter provided, for the purpose of paying the expenses of such improvement, or so much thereof as said board of county commissioners shall determine, not in any instance exceeding one per cent of the taxable valuation of all real and personal property in the entire county as appearing on the then last assessment roll. Such improvement shall be known as river and harbor improvement." Laws 1907, p. 582; Rem. & Bal. Code, § 8148 (P. C. 437 § 263).

A reading of this section makes it plain that the jurisdiction of the county commissioners to entertain the petition and to make any finding is, by the act itself, made dependent upon an antecedent intention or purpose on the part of the government of the United States to construct the canal. Such an antecedent intention or purpose could only be known through and by an act of Congress. It is plain, therefore, that the board of county commissioners had no power to create a jurisdiction in themselves which could not exist in the absence of some Congressional action, by a mere finding that such an intention existed. The statute here in question confers no such power and, in fact, does not apparently contemplate any such finding on their part. The recital or reference to some such specific act of Congress was, therefore, necessary to the validity of their order looking to the formation of an assessment district, or to any effective force in their finding that the construction of the canal would be for the benefit of the people of the county. In *State ex rel. Burke v. Board of County Com'rs, supra,* this court, after an exhaustive review of all of the acts of Congress and of the legislature of this state upon the subject antecedent to

the act here in question, and up to the action of the county commissioners of September 28, 1908, rescinding their former action, held as follows:

"In all this legislation we fail to find any act or declaration by the national government which discloses any intention or proposal on the part of the government to construct or operate this canal, now, or within a reasonable time in the future, or at all."

concluding that:

"It is manifest from the record that the people of King county have expended much money upon the enterprise, and have earnestly labored to induce the government to undertake the work; but it is also apparent from the acts of Congress above referred to that, while the government has placed no obstacles in the way of the work by King county or private citizens, it has manifested no intention to construct or operate the canal within a reasonable time. The county commissioners were, therefore, without authority under the act of 1907 to create the assessment district, or to levy a special assessment in aid of the canal."

The appellant claims that the "*Burke* case does not touch the point as to the authority of the county commissioners to incur the expense incident to the creation of such an assessment district." With this claim, we cannot agree. It is clear that, if the board of county commissioners had no authority to create the district, it had no authority to incur any expense incident to the creation of the district. The whole includes all of its parts. If the assessment had proceeded, it is obvious that the persons whose property was included in the roll could have raised this objection to the roll, and it seems equally clear that the county, on behalf of its taxpayers, can raise the same objections of lack of authority as to the expense of making the roll. This is certainly true, wanting an estoppel, which, as we have seen, in the absence of the initial authority, cannot be invoked. It is clear that our holding in the *Burke* case establishes the fact that the appointment of the river and harbor improvement commission, and all steps looking to the formation of the assess-

ment district and the making of an assessment roll, were premature and void *ab initio*.

It is true that, subsequent to the decision in the *Burke* case, this court, in the case of *Bilger v. State*, 63 Wash. 457, 116 Pac. 19, held the act of 1907 constitutional, but it did not overrule or modify the former decision, nor intimate that, at the time of the former decision, any such intention or purpose to construct the canal had been evinced by the general government as would then have rendered the act of 1907 operative as authority to the county commissioners to proceed thereunder. On the contrary, the following language from the opinion in the *Bilger* case is a clear intimation that, but for acts of Congress subsequent to the *Burke* decision, the decision in the *Bilger* case would have been ruled by the former holding:

"Again, it is said that the United States has never undertaken to construct the canal, and that this court so held in *State ex rel. Burke v. Board of Com'rs*, 58 Wash. 511, 109 Pac. 350. In the case cited we did say that there was no sufficient evidence of any intention or proposal on the part of the government to construct or operate the canal, but that was said prior to the act of the 2d session of the 61st Congress, which appropriated $150,000 for that purpose, and made available for the same purpose some $2,124,000 more. This latter act set all doubts on the question at rest, and there can no longer be any question as to the intent and purpose of the government."

The case before us is just as clearly controlled by the facts existing at the time the proceedings were instituted, and the contract made and performed by the appellant, as was the *Burke* case. If the appellant ever acquired any legal rights under this contract, they accrued immediately on the making and performance by it of the contract. If the contract was void for lack of power or legal authority to make it when made, it is void now, since it was not and could not be ratified. It is certain that the subsequent acts of Congress could not,

10—76 WASH.

and did not, operate as curative acts, breathing life into a contract void when made.

The appellant contends that, by the act of 1907, the board of county commissioners became a tribunal empowered to exercise an independent judgment, and that, when it found that the general government was intending and proposing to build the canal, that finding became a quasi judicial determination, conclusive of the fact, upon which the appellant had the right to rely. Two cases are cited which, it is claimed, support this contention. In the case of *Commissioners of Douglas County v. Bolles*, 94 U. S. 104, the right of recovery by *bona fide* holders of negotiable bonds issued by a county in aid of the construction of a railroad was involved. It was there held that the recital by the board in the bonds that authority had been granted to the board to issue the bonds by a vote of the electors was conclusive as in favor of a *bona fide* holder for value. A similar question was involved in the other case cited (*Town of Coloma v. Eaves*, 92 U. S. 484), and the decision was the same way. Both of these cases are rested squarely upon the rights of *bona fide* holders for value of negotiable bonds. The gist of each decision was that the recitals in the bonds were a sufficient protection to such *bona fide* holders. No such element is found in the contract here. No rights of *bona fide* holders for value are involved.

III. We find it unnecessary to enter into any lengthy discussion of the question whether the contract is void as against public policy because of the interest therein, as stockholder, trustee and officer of the appellant company, of one of the members of the river and harbor improvement commission. The following decisions of this state strongly support that view: *Northport v. Northport Townsite Co.*, 27 Wash. 543, 68 Pac. 204; *Shaw & Hodgins v. Waldron*, 55 Wash. 271, 104 Pac. 272, 28 L. R. A. (N. S.) 735; *Miller v. Sullivan*, 32 Wash. 115, 72 Pac. 1022; *State ex rel. Gladwin v. Cheney*, 67 Wash. 151, 121 Pac. 48; *Gantenbein v. Pasco*, 71 Wash. 635, 129 Pac. 374, 131 Pac. 461. While these

cases arose upon statutes applicable to cities and towns, expressly prohibiting and avoiding contracts in which any officer of the municipality shall be interested directly or indirectly, such statutes are but declaratory of the common law, and the same considerations of public policy which underlie the statutes would seem to apply to all public officers. 2 Dillon, Municipal Corporations (5th ed.), § 773; *Coughlin v. Holmes*, 53 Wash. 692, 102 Pac. 772. We prefer, however, to rest our decision upon the broad ground that the proceedings looking to the formation of the district, and leading to the appointment of the river and harbor improvement commission, were premature and void *ab initio*, and that the contract was made without legal authority, and conferred no rights enforceable against any fund, and that, by reason of the lack of any initial power to make the contract, it could not be ratified.

The judgment is affirmed.

CROW, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.