23 583
34 428

23 583
e37 39

23 583
40 548

[No. 3533. Decided December 18, 1900.]

THE STATE OF WASHINGTON, *Appellant, v.* CITY OF PULLMAN, *Respondent.*

MUNICIPAL CORPORATIONS—CONTRACTS—ULTRA VIRES.

A contract by a town to purchase water pipe laid by another party outside of the town limits at a price in excess of $2,000, and supply water to such party and other persons without the limits of the town, is *ultra vires* under Gen. Stat., § 683, which provides that in the erection, improvement and repair of all public works, when the expenditure required for the same exceeds the sum of $100, the same snall be done by contract let to the lowest responsible bidder, and under Id., §§ 696, 697, which prohibit a town from contracting for the extension of its water system, whereby an indebtedness is created, without the assent of three-fifths of the voters of the town.

SAME—ESTOPPEL.

When the contract of a municipal corporation is absolutely *ultra vires*, the fact that the municipality has received the benefits of the contract affords no ground for an estoppel against its denying the validity of the contract.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge. Affirmed.

*P. H. Winston,* Attorney General, *T. M. Vance* and *Alex M. Winston,* for the State.

*V. E. Bull,* for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—This action was brought to recover the sum of $2,171.36, for damages alleged to have been sustained by plaintiff, the state of Washington, by reason of the failure of the defendant, the city of Pullman, to purchase certain pipe in accordance with the contract set up in the amended complaint. The regents of the Agricultural College, Experiment Station and School of Sciences of the state of Washington entered into a contract with the city of Pullman, through its mayor, that the college or the state would construct a reservoir on a point of land in the rear of the college, of 250,000 gallons capacity, lay a six-inch main therefrom to connect with the town pump of the city of Pullman, give to the town the use of said reservoir and pipe, and also give to the town the right to buy the said main at actual cost of laying the same, a certain monthly stipend for pumping the water for the use of the college, and a certain number of cents per gallon for water used for irrigation. At the end of the term for which the contract ran, the city refused to buy the plant, and this action was brought by the state to recover the value thereof, which was alleged to be $2,171.36. Demurrer was interposed, which was overruled, and the city answered, pleading want of consideration, that the contract was *ultra vires,* and other defenses. With the view we take of the question of whether or not the city exceeded its power in entering into this contract, it will not be necessary to enter into a discussion of the question of whether the regents had a right to bind the state or bring this action in its behalf.

The contract is too long to set forth at length in this opinion, but, in substance, it was a promise on the part of the city to supply the college with water at a specified rate and a promise to buy from the state a portion of the water

system or pipe lines from the west line of the state lands to connect with the town water system, to enable the town to supply water to persons without the limits of the town. Section 683, 1 Hill's Code, provides that in the erection, improvement, and repair of all public buildings, works, etc., when the expenditure required for the same exceeds the sum of $100, the same shall be done by contract, and shall be let to the lowest responsible bidder, after due notice, under such regulations as may be prescribed by ordinance. If this transaction was simply a commercial transaction, it was beyond the power of the city authorities to enter into the contract, under the provisions of the section just quoted. There was no power in the regents of the college, as agents of the state, to make a contract to erect a water system and sell it to the town. Neither did the town of Pullman have any authority to enter into a contract to supply water to any person or corporation beyond its limits, or to construct a water system for the benefit of any other person than itself or its inhabitants. Under the provisions of §§ 696, 697, 1 Hill's Code, the law which was in force at the date of the contract, the town was prohibited from contracting for the extension of its water system without the approval of its citizens; and, where the extension or addition created an indebtedness,— and in this case an indebtedness was contracted for,—it required the assent of three-fifths of the voters of the town. So that there can be no question but that the action of the town authority in entering into this contract was beyond the powers given it by law. In such case it is well settled that the plea of *ultra vires* may be interposed.

In the discussion of this question, the distinction which is made between the application of the law to private corporations and its application to municipal corporations must be kept in mind, and this will eliminate from the

discussion the most of the authorities cited by the appellant. This distinction is wisely maintained, for the authority of a private agent is known only to the agent and the principal, but the authority of the officers of a municipal corporation is a matter of public record, which is available to every one. The scope of their authority is embraced either in their charters or in the statutes of the state, and the limitation upon their powers is equally available to every one who desires to deal with them. Hence, if one, knowing their powers and limitations, sees fit to enter into illegal contracts, contracts which the law has forbidden for the protection of the tax payers of the municipality, he has no right to complain when he is estopped from enforcing his illegal contract by a plea of *ultra vires* by the citizens of a municipality. If he knew the law and contracted in the face of that knowledge, he certainly ought not to recover; if he did not know the law as matter of fact, he is subject to no greater hardship than has always been imposed upon the citizen, viz., the denial of the right to plead ignorance of the law on the theory that it was his duty to know it.

It is claimed, however, by the appellant, that, having received the benefits of the contract which the city entered into, it ought to be estopped from denying its validity; also that it had ratified the contract by receiving the benefits. It is well established that the power to ratify is co-extensive only with the power to contract, and that an act which was illegal for want of authority on the part of the contracting powers cannot be ratified. There has been a conflict of opinion on some branches of this question, but an investigation of the authorities will show, we think, that where courts have estopped municipalities from interposing the plea of *ultra vires,* and from escaping the responsibility of their acts, it has been where there has

been a defect in the execution of the contracts, as in the issuance of bonds, etc., and not where there has been an absolute want of power on the part of the municipality to contract. The most of the cases cited by the appellant, as we indicated before, were cases of private corporations. The appellant cites *Hitchcock v. Galveston*, 96 U. S. 341, in support of its contention. This is a case which falls within the rule announced above, and the city was proceeding within its powers, but in an irregular manner. In speaking of the claim that the city had exceeded its power, the supreme court of the United States in its opinion says:

"Another objection to the validity of the contract, urged by the city, is founded upon a provision of the charter, that the council shall not borrow for general purposes more than $50,000; and it is said the contract, if valid, creates a liability of the city exceeding that sum. This, however, does not appear in the contract itself, and this, perhaps, is a sufficient answer to the objection. But the limitation is upon the power to borrow money, and to borrow it for *general* purposes. It implies that there may be lawful purposes which are not general in the sense in which that word is used in the charter. An examination of the whole instrument, and of the numerous and large powers conferred upon the council, as well as duties imposed, makes it evident that the provision could not have been intended to prohibit incurring an indebtedness exceeding the sum named. It is in no sense a limitation of the debt of the city."

There are some remarks in this opinion that give color to the contention of the appellant; but that the supreme court of the United States did not intend to lay down the rule that, when a city exceeded its powers in a contract made by the authorities, the plea of *ultra vires* could not be successfully interposed, is made evident by a subsequent case from the same court, viz., *Salt Lake City v. Hollister*,

118 U. S. 256 (6 Sup. Ct. 1055), wherein is pointed out the distinction between actions arising on contracts made by a corporation in excess of its corporate powers and actions against corporations for injuries caused by tortious acts done by its agents in the course of its business and of their employment in excess of its powers. In that case it was held that the city could not escape taxes due on its property, whether acquired legally or illegally, and could not make its want of legal authority to engage in a particular transaction or business a shelter from the taxation imposed by the government on such business. And, in answer to the contention of appellant in that respect, the court said:

"It remains to be observed, that the question of the liability of corporations on *contracts* which the law does not authorize them to make, and which are wholly beyond the scope of their powers, is governed by a different principle. Here the party dealing with the corporation is under no obligation to enter into the contract. No force, or restraint, or fraud is practiced on him. The powers of these corporations are matters of public law open to his examination, and he may and must judge for himself as to the power of the corporation to bind itself by the proposed agreement. It is to this class of cases that most of the authorities cited by appellants belong—cases where corporations have been sued on contracts which they have successfully resisted, because they were *ultra vires.*"

It is true that the court, continuing, says:

"But, even in this class of cases, the courts have gone a long way to enable parties who had parted with property or money on the faith of such contracts, to obtain justice by recovery of the property or the money specifically, or as money had and received to plaintiff's use;" citing *Thomas v. Railroad Co.,* 101 U. S. 71; *Louisiana v. Wood,* 102 U. S. 294; *Chapman v. Douglass County,* 107 U. S. 348.

But an examination of those cases shows that the general rule announced by the court above had not been impinged upon.

The law is announced by Mr. Dillon, in his work on Municipal Corporations (4th ed.), § 457, in a manner so concise and explicit that we cannot do better than to give it room in this opinion. It is as follows:

"The general principle of law is settled beyond controversy, that the agents, officers, or even city council of a municipal corporation, *cannot bind the corporation* by any contract which is *beyond the scope of its powers,* or entirely foreign to the purposes of the corporation, or which (not being legislatively authorized) is against public policy. This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are the corporators; the officers are but the public agents of the corporation. The duties and powers of the officers or public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. The opposite doctrine would be fraught with such danger and accompanied with such abuse that it would soon end in the ruin of municipalities, or be legislatively overthrown. These considerations vindicate both the reasonableness and necessity of the rule that the corporation is bound only when its agents or officers, by whom it can alone act, if it acts at all, keep within the limits of the chartered authority of the corporation. The history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard. It results from this doctrine that contracts not authorized by the charter or by other legislative act, that is, not within the scope of the powers of the corporation under any circumstances, are void, and in actions thereon the corporation may successfully interpose the plea of *ultra vires,* setting up as a defense its own want of power under its charter or constituent statute to enter into the contract;"—citing authorities too numerous to reproduce.

And if anything were wanting to elucidate the wisdom of the text announced, or to show the pernicious results of tolerating the practice indulged in by municipal authorities to exceed their legal powers, the history of the cities of the Pacific Coast furnishes the instance, where, under the stimulus of rivalry in the growth of cities, obligations have been incurred which have bankrupted the cities and impoverished the inhabitants by excessive taxation rendered necessary to meet such obligations.

In *Brady v. New York,* 16 How. Pr. 432, it was held that, where the contract under which work was done was void because entered into in violation of the charter, the contractor could not recover for the work in any form, neither under the contract nor as upon a *quantum meruit,* and that the subsequent ratification of the contract by the common council, whether before or after the work was done, did not make it binding on the corporation. It was further held that, where the officers of a corporation do an act in excess of the corporate power, the corporation is not bound, and when the statute under which the corporation acts restricts its action to a particular mode, none of the agents through whom the corporation acts can bind it in any other than the mode prescribed. This is a very instructive and well-considered case. In *Mayor, etc., of Baltimore v. Reynolds,* 83 Am. Dec. 535, it was held that a person dealing with agents who act under special or express authority, whether written or verbal, is bound at his peril to know what the power of the agent is and to understand its legal effect, and, if the agent exceeds the boundary of his legal powers, the act, as far as it concerns the principal, is void. The authorities are collated and distinguished in this case, and, in answer to the plea of hardship, the court quotes from *Lee v. Munroe,* 7 Cranch, 370, where it is said:

"It is better that an individual should now and then suffer by such mistakes, than to introduce a rule, against an abuse of which, by improper collusions, it would be very difficult for the public to protect itself."

In fact, the rule is so universal that it seems unnecessary to cite further authority.

But we are not without precedent in our own decisions. In *Arnott v. Spokane*, 6 Wash. 442 (33 Pac. 1063), it was held, in common with universal authority, that, wherever a person enters into a contract with an agent of a municipal corporation, he must at his peril ascertain the extent of such agent's authority, and, if he fails to do so, he alone must suffer the consequences. It was also said:

"The power to ratify a particular contract presupposes the power to make it in the first instance; and, if it is such that it could not be made originally except in a certain prescribed mode, where that mode is disregarded the power to ratify does not exist. A contract which is invalid because not authorized by law cannot be made valid and binding retroactively by any subsequent action of the corporate body, and a liability be thereby fastened upon the corporation;"—citing *Zottman v. San Francisco*, 20 Cal. 97 (81 Am. Dec. 96); *Nicolson Pavement Co. v. Painter*, 35 Cal. 704; *McPherson v. Foster*, 43 Iowa, 48 (22 Am. Rep. 215); *City of Bryan v. Page*, 51 Tex. 532.

In *Chehalis County v. Hutcheson*, 21 Wash. 82 (57 Pac. 341, 75 Am. St. Rep. 818), a case where a great hardship was worked upon the appellant by the application of this rule, where the appellant, who was a school superintendent for Chehalis county, and had visited schools under a statute which allowed a certain compensation therefor, but which statute was afterwards pronounced unconstitutional by this court, it was held that the county would not be estopped from disputing the validity of the warrants which had been issued in payment of such claims, for the

reason that the contract would be void *ab initio* by virtue of the original lack of authority upon the part of the commissioners. The court announced, as the reason of the rule which governs the decision in this case, that the acts of the officers were unauthorized and void, and that one dealing with them was bound to take notice of the extent of their powers; citing 2 Herman on Estoppel, p. 1365, to the effect that:

"The true principle in such cases is well settled that one cannot do indirectly, what cannot be done directly, and, where there is no power or authority vested by law in officers or agents, no void act of theirs can be cured by aid of the doctrine of estoppel. Where there is power, and it is irregularly exercised, or there are defects and omissions in exercising the authority conferred by law, the doctrine of equitable estoppel may well be applied by courts."

In the case at bar there was no power on the part of the municipality to enter into this contract. The power was conferred upon the voters. The city had authority only to put the machinery in motion which would elicit and determine the will of the voters. The discretion and authority were conferred upon the voters, and not upon the officers of the city. Affirmed.

REAVIS, FULLERTON, ANDERS and WHITE, JJ., concur.