PERRY WATER, LIGHT & ICE CO. v. CITY OF PERRY.

No. 748.   Opinion Filed November 14, 1911.

1.   **MUNICIPAL CORPORATIONS** — Contracts for Personalty — **Limitation of Indebtedness.**   Section 538 of the Statutes of Okla- homa Territory 1893 (sec. 647, Comp. Laws 1909) limits the power of a city council to contract for personalty at one purchase in excess of the sum of $500.

(a)   A contract for one purchase of items of personalty aggrega- ting a sum in excess of $500, without first being authorized by a majority vote of the qualified electors resident of said city, is void.

2.   **SAME—Necessity of Popular Vote—Appeal and Error—Change of Theory.**   Where the aggregate value of such personalty received and accepted by the officers of a municipality under one trans- action or purchase, or received with the consent of the owner of such personalty, and applied to its use, exceeds the sum of $500, the authority not being first had by the approval of a majority of the electors resident of such municipality, no liability therefor is created against such municipality.

(a)   The case having been tried in the lower court upon the theory that the question as to the want of power of the municipality to make such contract was properly raised, plaintiff in error will not be permitted in this court to procure a reversal on the ground that it was not, when there is no contention that such authority by an approval of a majority of the electors was first had.

(Syllabus by the Court.)

*Error from District Court, Noble County; W. M. Bowles, Judge.*

Action by the Perry Water, Light & Ice Company against

the City of Perry.   Judgment for defendant, and plaintiff brings error.  Affirmed.

*L. L. Cowley* and *Harris & Nowlan,* for plaintiff in error.

*A. N. Whiteside,* for defendant in error.

WILLIAMS, J.  The plaintiff in error,  as  plaintiff,  instituted its action in the lower court against the defendant in error, as defendant, declaring in its petition in part as follows:

"That on and prior to the first day of·July, 1903, the said defendant was the owner of a water-works system in said city. That on the said first day of July, 1903, for the purpose of conducting and supplying said water-works system with  coal  for fuel, oil, etc., the said city purchased of this  plaintiff  a  large amount of merchandise.   That at said time the said city was the owner and operator of a light system for the purpose of furnishing light for the use of said city and its inhabitants.   That on the said first day of July, 1903, the said city  purchased  of  this plaintiff a large amount of merchandise, such as carbons, lamps, coal, oil, repairs and supplies.   That at the time of the purchase of said articles it was agreed between plaintiff and defendant that the same should be listed and a complete inventory made thereof and the said goods inspected and delivered to said city, all of which was done by the agents of plaintiff and defendant.

"That a true and exact account and inventory of all the said property and merchandise so purchased  by  defendant  from plaintiff and delivered in accordance with the  agreement  and arrangement between plaintiff and defendant, showing  the  description of each item and the price which the said defendant was to pay therefor, and which was the reasonable and actual value thereof at said time and place, is hereto attached, marked 'Exhibit A' and made a part hereof.

"Plaintiff further says that said contract, agreement and arrangement was verbal and not in writing, but that the same was fully executed and the property mentioned·and described in said exhibit A was then and there delivered by plaintiff to defendant and the said defendant has used and consumed and ever since retained and appropriated said property to its exclusive use and benefit.

"Plaintiff further says that said defendant has often been requested to pay for said property but that said payment has not

been made and defendant has positively refused and neglected to pay for the same, after a proper and formal bill and demands had been presented to said city and the officers thereof. That no part of said claim or demand has been paid.

"Wherefore plaintiff prays judgment against said defendant for the amount of said indebtedness in the sum of $906.21, with interest thereon from the 1st day of July, 1903, at the rate of 7 per cent per annum, for the costs of this action and all other proper relief."

On November 28, 1906, the defendant demurred to the petition, which was overruled, and exceptions saved. On December 11, 1906, the defendant answered by general denial, and, further, by averring that "all articles received of plaintiff and mentioned in plaintiff's petition were purchased by said city from said plaintiff under and by virtue of a written contract executed by plaintiff and defendant, bearing date of June 27, 1903", and that same had been paid for. On September 6, 1905, plaintiff filed its reply, denying each and every allegation of said answer, except admitting the execution of the written contract, but averred "that said contract was for the purchase and sale of the electric light, ice and power plant herein referred to and with the exceptions herein specified, and was not intended to include or cover the property and items set forth in the plaintiff's petition, such as supplies, coal, etc., not in use, or never having been in use, in connection with the said light, water and power plant, and at the time of executing and entering into the said written contract this plaintiff fully understood and believed that said written contract had nothing to do with the articles," etc.

On October 12, 1908, the plaintiff filed a motion for judgment on the pleadings, which was denied. A jury being waived, said cause was tried to the court. The defendant objected to the introduction of any evidence under the petition, for the reason that the same failed to state facts sufficient to constitute a cause of action, which was overruled, and exceptions saved.

After the evidence was introduced on the part of the plaintiff, the defendant interposed a demurrer to the same, in part, *in hacc verba*:

"The city further demurs, for the reason that the evidence of the plaintiff shows that the goods purchased were personal property, and the contract price was more than five hundred dollars, and fails to show that it was ever submitted to a vote of the, people of the city of Perry."

The record then further recites:

"Thereupon counsel for the respective parties argued the said demurrer to the court. Mr. Harris: The plaintiff now, pending the consideration of the demurrer to the evidence, offers to remit all with the exception of five hundred dollars of the amount claimed, and demands judgment for five hundred dollars and costs. Mr. Johnson: That don't help him, as a matter of law. Mr. Harris: With interest from the date of the taking of the property. Mr. Whiteside: If any of it is void, it is all void. The Court: Yes, I think so. Thereupon counsel for the respective parties continued to argue the said demurrer. The Court: Demurrer sustained. Mr. Harris: Exception. The Court: Do you desire to stand on the demurrer, Judge Harris, and take time? Mr. Harris: I think I better file. a motion for a new trial. I will prepare it right away."

The undisputed evidence in this record on the part of the plaintiff in error shows that all of this property was received under a verbal contract by one purchase, and that not only the value, but also the agreed price, exceeded five hundred dollars.

Section 2 (538), article 1, chapter 14, Statutes of Oklahoma Territory 1893, provides:

"All cities governed by the provisions of this act, shall be bodies corporate and politic, and shall have power to sue and be sued, to purchase and hold real and personal property for the use of the city, to sell and convey any real or personal property, owned by the city, and make such order respecting the same as may be conducive to the best interests of the city, to make all contracts and do all other acts in relation to the property and affairs of the city, necessary to the good government of the city, and to the exercise of its corporate and administrative powers, to have and use a corporate seal, and alter the same at pleasure, and to execute such other and further powers, as are, or may be conferred by law: Provided, however, That no real estate shall be bought or sold, nor shall any personal property, where the value of the personal property, contracted for at one purchase.

exceeds five hundred dollars, until the purchase or sale is authorized by a majority vote of the electors, resident of the city or village."

This section was construed by the Supreme Court of Oklahoma Territory in *Fire Extinguisher Manufacturing Company v. City of Perry,* 8 Okla. 429, wherein it was held that it limited the purchase of fire apparatus to five hundred dollars; that a contract made for the purchase of apparatus in excess of five hundred dollars is void and no recovery can be had thereon.

It is insisted by counsel for the plaintiff in error that the question of such contract being void by virtue of said section, requiring all purchases of personal property in excess of five hundred dollars to be approved first by the electors of such municipality, was not raised in the lower court; but from the foregoing excerpt it would seem that the court below, as well as the parties thereto, treated this question as properly raised. This being the case, the plaintiff in error will not be permitted to change front in this court and insist that such question was neither properly raised nor properly before the trial court. *Harris v. First National Bank of Bokchito,* 21 Okla. 189, 95 Pac. 781; *Queen Ins. Co. of America v. Cotney et al.,* 25 Okla. 125, 105 Pac. 651; *Wattenbarger v. Hall,* 26 Okla. 815, 110 Pac. 911; *Gann v. Ball,* 26 Okla. 26; *St. Louis & S. F. R. Co. v. Key,* 28 Okla. 769, 115 Pac. 875.

Counsel for plaintiff in error in their brief say:

"Counsel doubtless had in mind, at the time of interposing this demurrer, the case of *Fire Extinguisher Mfg. Co. v. City of Perry,* 8 Okla. 429, and if the plaintiff's claim in this case was founded and proven solely upon the theory that the city was liable upon an express contract for the contract price of the property purchased, the statutory limitation upon the authority of the council to contract for personal property in excess of $500.00 without first submitting the question to a vote of the people of the city might be a material question in this case."

Counsel thus assume, at least, if not concede, that the question was properly raised in the lower court. He pleads that the property was delivered to the city under a verbal contract. The

evidence that he offers to sustain his petition tends to sustain that allegation. He seeks, however, in the face of his petition, to waive the express verbal contract and recover under *quantum meruit,* which is an action in assumpsit, or upon an implied contract. Not only in the record, but also in the briefs, it appears to be conceded that the question as to the purchase of said personalty was not submitted to the electors of said municipality for their approval. Such being the case, if such contract for said reason was void and no recovery could be had, either on said contract or *in quantum meruit,* which is an action in assumpsit, this court would do a useless thing by reversing this case and remanding it for another trial. For the defendant, after the cause was remanded, would certainly be permitted to amend its pleadings and set up that said property was delivered either under an express or implied verbal contract, in violation of section 538, *supra,* and that therefore no recovery could be had *in quantum meruit.* Under such conceded facts, this court should pass on the question on the theory that it was properly raised before the trial court. *Kuchler et al. v. Weaver,* 23 Okla. 420, 100 Pac. 915, The only objection made as to the want of authority not being pleaded in the answer was as to the mayor and certain aldermen not being authorized by the council to make the contract of purchase.

In *Fire Extinguisher Mfg. Co. v. City of Perry,* 8 Okla. 429 paragraph 3 of the syllabus is as follows:

"Where a city council purchases fire apparatus at one purchase, and agrees to pay the sum of $1,100 therefor, no election having been held to authorize such purchase, the contract is void, and the city council cannot validate such illegal contract by splitting the sum into three parts of less than $500 each, and executing warrants therefor, and the payment of warrants so executed may be defeated by the city."

At page 433, the court said:

"Section 538 is intended to limit the power of the city council in the purchase of personal property at one time, to sums of $500 and less, unless such purchase shall be authorized by a majority vote of the electors resident of the city. If the council

deem it advisable to make a purchase of personal property the value of which is in excess of $500, it becomes their duty to submit the question as to whether such purchase shall be made to a vote of the resident voters of the city, and the power to make such purchase can only be exercised when a majority vote of the electors voting on such proposition has authorized the council to make it."

This language applies equally to a claim under *quantum meruit.*

In *Salt Creek Township v. King Iron Bridge & Mfg. Co.,* 51 Kan. 520, Justice Horton, in speaking for the court, said:

"Upon the facts disclosed in the record, and the provisions of the statute authorizing, under certain circumstances, township officers to build and pay for bridges, we think the bridge and manufacturing company cannot recover. It seems to be conceded that the company cannot recover upon its contract. The only claim made is that the township is estopped, and should be required to pay the reasonable value of the bridge. At the time of the execution of the contract, and also at the time the bridge was constructed, the public records of Salt Creek township showed that its officers had no power or authority to make any contract for the bridge or to issue any bonds. The proposition submitted to the people for the building of a bridge did not receive three-fifths of their votes. It therefore was defeated. The statutory limitation of indebtedness in the township, as prescribed in par. 413, was also an inhibition against the making of the contract. The township board, and, possibly, the bridge and manufacturing company, mistook the law. In any event, the township officials acted in direct conflict with the provisions of the statute prescribing their duties and limiting their powers. The records of the township were public, open to all, and the bridge and manufacturing company was not and could not have been misled. The bridge was constructed upon a public highway within the township, but used by the people generally.

"It is a well settled rule that township or other municipal officers cannot do by indirection that which they might not do directly. (*The State ex rel. v. Comm'rs of Marion Co.,* 21 Kan. 419.) If township officers may disregard all of the statutory provisions concerning the construction of and payment for bridges, and create a liability against the people of a township by accepting bridges or other work without any power so to do, and

thereby make the township liable, then the provisions of the stat-
ute defining how bridges should be built and paid for have no
force whatever.    Under such a rule, the township officers may
at any time build and accept bridges and create liabilities against
the people of a township without a vote and without limit.    As
the contract between the township officers and the bridge and
manufacturing company is void under the statute, we do not
think the other facts disclosed show the township is estopped
from asserting the want of power on the part of the township
officers, or from defending against any liability for the bridge.

"There is no innocent holder of bonds in this case, and in
fact no innocent parties.    The township officers, as well as the
bridge and manufacturing company, are presumed to know the
law.    The statute clearly declares the conditions upon which a
municipal township may obtain bridges; but if the provisions
of the statute are overlooked, or voluntarily cast aside by the
parties, with full knowledge of all the facts, no estoppel of any
kind can be created.    There is a seeming hardship in refusing to
pay for the bridge after the money of the company has com-
pleted it and it is in use upon a regular laid-out public high-
way.    But the want of legal authority to contract was known,
or ought to have been known, by the company before it expend-
ed any of its money.    Therefore it is at fault.    Those dealing
with a township must see to it that its officers have power to act.
In this case, nothing was concealed and all the facts appear up-
on the public records.    A township or other municipality can
only act by the mode prescribed by law.    Any other rule leaves
the taxpayer at the mercy of the officers of the township and
contractor, and would render all statutory provisions of limita-
tion of power nugatory.    (*Lewis v. Comm'rs of Bourbon Co.,*
12 Kan. 186; 15 Am. & Eng. Encyc. of Law, 1124; *Daly v. City
of San Francisco,* 13 Pac. Rep. 321; *Buchanan v. Litchfield,*
102 U. S. 278; *Newberry v. Fox,* 33 N. W. Rep. [Minn. 1887]
333; *Reichard v. Warren Co.,* 31 Iowa, 381; *Brady v. Mayor
of New York,* 2 Bosw. 187; *Law v. The People,* 87 Ill. 385.)"

In *Allsman et al. v. Oklahoma City,* 21 Okla. 142, 95 Pac.
468, the plaintiff sued for the recovery of the unearned portion
of certain money paid to the city for a liquor license, which had
failed on account of the repeal of the statute under which it
was issued.    In that case there was no question of the municipal-

ity acting beyond its authority or in express violation of a stat-
utory or constitutional prohibition.

In *The City of Oklahoma v. The T. M. Richardson Lum-
ber Company,* 3 Okla. 5, no question of the want of authority
of the municipality to purchase said lumber was involved. The
provisional government for the regulation and management of
the affairs of the cities and towns of the territory of Okla-
homa which were established prior to the act of Congress ap-
proved May 2, 1890, being merely a voluntary association of the
people living in such city, purchased lumber from the Jones-
Richardson Lumber Company. The lumber was applied to con-
structing sidewalks upon the streets, and for other public im-
provements for the city. The unpaid account for the lumber
was assigned for value to the defendant in error, the T. M.
Richardson Lumber Company. Afterwards, the plaintiff in error,
the city of Oklahoma City, was legally incorporated, and, com-
ing into possession of said streets, used said lumber. It had
authority then to purchase said lumber without any reference to
the voters. The court properly held it was liable *in quantum
meruit* or assumpsit, there being no statute prohibiting such pur-
chase.

In *Doyle & Cress v. School District,* by Robertson, Commis-
sioner (30 Okla. —), not yet reported, it was held that where
the majority of the members of a board of a school district em-
ployed a law firm to defend the board in a suit brought against
it, at an agreed fee of $75, though the board may have failed to
meet in an official capacity and authorize such employment, yet,
if the service was actually rendered, and the contract became
an executed one, and was of the reasonable value claimed, to
wit, $75, and the school district received the benefit therefrom,
the board was estopped from pleading the irregularity of said em-
ployment. This holding is in line with *Allsman et al. v. Okla-
homa City, supra,* and *City of Oklahoma City v. T. M. Richard-
son Lumber Company, supra.* The school board had the au-
thority to make the contract of employment without the approval
of the electors of said district or any other independent agency.

The vice complained of went to the want of action of the school board as to what it was empowered to do, and did not consist of a violation of any statute or constitutional provision placing a limitation upon its powers.

In *State v. City of Pullman,* 23 Wash. 583, 63 Pac. 265, Chief Justice Dunbar, in speaking for the court, said:

"It is claimed, however, by the appellant, that, having received the benefits of the contract which the city entered into, it ought to be estopped from denying its validity, also that it had ratified the contract by receiving the benefits. It is well established that the power to ratify is coextensive only with the power to contract, and that an act which was illegal for want of authority on the part of the contracting powers cannot be ratified. There has been a conflict of opinion on some branches of this question, but an investigation of the authorities will show, we think, that where courts have estopped municipalities from interposing the plea of *ultra vires,* and from escaping the responsibility of their acts, it has been where there has been a defect in the execution of the contracts, as in the issuance of bonds, etc., and not where there has been an absolute want of power on the part of the municipality to contract. The most of the cases cited by the appellant, as we indicated before, were cases of private corporations. The appellant cites *Hitchcock v. Galveston,* 96 U. S. 349, 24 L. Ed. 661, in support of its contention. This is a case which falls within the rule announced above, and the city was proceeding within its powers, but in an irregular manner. In speaking of the claim that the city had exceeded its power, the Supreme Court of the United States in its opinion says: 'Another objection to the validity of the contract urged by the city is founded upon a provision of the charter that the council shall not borrow for general purposes more than $50,000; and it is said the contract, if valid, creates a liability of the city exceeding that sum. This, however, does not appear in the contract itself, and this, perhaps, is a sufficient answer to the objection. But the limitation is upon the power to borrow money, and to borrow it for general purposes. It implies that there may be lawful purposes which are not general in the sense in which that word is used in the charter. An examination of the whole instrument, and of the numerous and large powers conferred upon the council, as well as duties imposed, makes it evident that the provision could not have been intended to prohibit incurring an indebtedness exceeding the sum named. It is in no sense a limita-

tion of the debt of the city.' There are some remarks in this opinion that give color to the contention of the appellant; but that the Supreme Court of the United States did not intend to lay down the rule that, when a city exceeded its powers in a contract made by the authorities, the plea of *ultra vires* could not be successfully interposed, is made evident by a subsequent case from the same court, viz., *Salt Lake City v. Hollister,* 118 U. S. 256, 6 Sup. Ct. 1055, 30 L. Ed. 176, wherein is pointed out the distinction between actions arising on contracts made by a corporation in excess of its corporate powers and actions against corporations for injuries caused by tortious acts done by its agents in the course of its business and of their employment in excess of its powers. In that case it was held that the city could not escape taxes due on its property, whether acquired legally or illegally, and could not make its want of legal authority to engage in a particular transaction or business a shelter from the taxation imposed by the government on such business. And, in answer to the contention of appellant in that respect, the court said: 'It remains to be observed that the question of the liability of corporations on contracts which the law does not authorize them to make, and which are wholly beyond the scope of their powers, is governed by a different principle. Here the party dealing with the corporation is under no obligation to enter into the contract. No force or restraint or fraud is practiced on him. The powers of these corporations are matters of public law, open to his examination, and he may and must judge for himself as to the power of the corporation to bind itself by the proposed agreement. It is to this class of cases that most of the authorities cited by appellants belong,—cases where corporations have been sued on contracts which they have successfully resisted because they were *ultra vires.*' It is true that the court, continuing, says: 'But, even in this class of cases, the courts have gone a long way to enable parties who had parted with property or money on the faith of such contracts to obtain justice by recovery of the property or the money specifically, or as money had and and received to plaintiff's use,'—citing *Thomas v. Railroad Co.,* 101 U. S. 71, 25 L. Ed. 950; *Louisiana v. Wood,* 102 U. S. 294, 26 L. Ed. 153; *Chapman v. Douglass County,* 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378. But an examination of those cases shows that the general rule announced by the court above had not been impinged upon.

"The law is announced by Mr. Dillon in his work on Municipal Corporations, sec. 457 (4th Ed.), in a manner so concise

and explicit that we cannot do better than give it room in this opinion. It is as follows: 'The general principle of law is settled, beyond controversy, that the agents, officers, or even city council of a municipal corporation cannot bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being legislatively authorized) is against public policy. This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are the corporators; the officers are but the public agents of the corporation. The duties and powers of the officers or public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. The opposite doctrine would be fraught with such danger, and accompanied with such abuse, that it would soon end in the ruin of municipalities, or be legislatively overthrown. These considerations vindicate both the reasonableness and necessity of the rule that the corporation is bound only when its agents or officers, by whom it can alone act, if it acts at all, keep within the limits of the chartered authority of the corporation. The history of the workings of municipal bodies has demonstrated the salutary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard. It results from this doctrine that contracts not authorized by the charter or by other legislative act—that is, not within the scope of the powers of the corporation under any circumstances—are void, and in actions thereon the corporations may successfully interpose the plea of *ultra vires,* setting up as a defense its own want of power under its charter or constituent statute to enter into the contract,'—citing authorities too numerous to reproduce. And if anything were wanting to elucidate the wisdom of the text announced, or to show the pernicious results of tolerating the practice indulged in by municipal authorities to exceed their legal powers, the history of the cities of the Pacific Coast furnishes the instance, where, under the stimulus of rivalry in the growth of cities, obligations have been incurred which have bankrupted the cities and impoverished the inhabitants by excessive taxation rendered necessary to meet such obligations.

"In *Brady v. City of New York,* 16 How. Prac. 432, it was held that, where the contract under which work was done was void because entered into in violation of the charter, the contractor could not recover for the work in any form, neither under the contract nor as upon a *quantum meruit,* and that the sub-

sequent ratification of the contract by the common council, whether before or after the work was done, did not make it binding upon the corporation. It was further held that, where the officers of a corporation do an act in excess of the corporate power, the corporation is not bound, and, when the statute under which the corporation acts restricts its action to a particular mode, none of the agents through whom the corporation acts can bind it in any other than the mode prescribed. This is a very instructive and well-considered case. In *Mayor, etc., of Baltimore v. Reynolds,* 83 Am. Dec. 535, it was held that a person dealing with agents who act under a special or express authority, whether written or verbal, is bound at his peril to know what the power of the agent is, and to understand its legal effect, and, if the agent exceeds the boundary of his legal powers, the act, as far as it concerns the principal, is void. The authorities are collated and distinguished in this case, and, in answer to the plea of hardship, the court quotes from *Lee v. Munroe,* 7 Cranch, 370, 3 L. Ed. 374, where it is said: 'It is better that an individual should now and then suffer by such mistakes than to introduce a rule against an abuse of which, by improper collusions, it would be very difficult for the public to protect itself.' In fact, the rule is so universal that it seems unnecessary to cite further authority.

"But we are not without precedent in our own decisions. In *Arnott v. City of Spokane,* 6 Wash. 442, 33 Pac. 1063, it was held, in common with universal authority, that, wherever a person enters into a contract with an agent of a municipal corporation, he must, at his peril, ascertain the extent of such agent's authority, and, if he fails to do so, he alone must suffer the consequences. It was also said: 'The power to ratify a particular contract presupposes the power to make it in the first instance, and, if it is such that it would not be made originally except in a certain prescribed mode, where that mode is disregarded the power to ratify does not exist. A contract which is invalid because not authorized by law cannot be made valid and binding retroactively by any subsequent action of the corporate body, and a liability be thereby fastened upon the corporation.'—citing *Zottman v. City and County of San Francisco,* 20 Cal. 97; *Pavement Co. v. Painter,* 35 Cal. 704; *McPherson v. Foster,* 43 Ia. 48; *City of Bryan v. Page,* 51 Tex. 532. In *Chehalis County v. Hutcheson,* 21 Wash. 82, 57 Pac. 341, a case where a great hardship was worked upon the appellant by the application of this rule, where the appellant was a school superintendent for Chehalis county, and had visited schools under a statute which

allowed a certain compensation therefor, but which statute was afterwards pronounced unconstitutional by this court, it was held that the county would not be estopped from disputing the validity of the warrants which had been issued in payment of such claims for the reason that the contract would be void *ab initio* by virtue of the original lack of authority upon the part of the commissioners. The court announced, as the reason of the rule which governs the decision in this case, that the acts of the officers were unauthorized and void, and that one dealing with them was bound to take notice of the extent of their powers; citing 2 Herm. Estop. p. 1365, to the effect that 'the true principle in such case is well settled that one cannot do indirectly what cannot be done directly, and where there is no power or authority vested by law in officers or agents no void act of theirs can be cured by aid of the doctrine of estoppel. Where there is power, and it is irregularly exercised, or there are defects and omissions in exercising the authority conferred by law, the doctrine of equitable estoppel may well be applied by courts.' In the case at bar there was no power on the part of the municipality to enter into this contract. The power was conferred upon the voters. The city had authority only to put the machinery in motion which would elicit and determine the will of the voters. The discretion and authority were conferred upon the voters and not upon the officers of the city."

The question involved in *State v. City of Pullman, supra,* was, the municipality being prohibited from contracting for the extension of its water system without the approval of its citizens, whether *quantum meruit* or assumpsit would lie on account of the benefits received. This case is in point and sustains the judgment of the lower court.

In *Wiegel v. Pulaski County,* 61 Ark. 74, 32 S. W. 116, it is said:

"Can the county court authorize the letting of a contract to construct a turnpike road, without an appropriation made therefor? The statute itself answers this question in the negative, in section 1279, Sand. & H. Dig., which provides that 'no county court, or agent of any county shall hereafter make any contract on behalf of the county unless an appropriation has been previously made therefor, and is wholly or in part unexpended.' This is the act of March 19, 1879. Construing this act, this court held, in the case of *Fones v. Erb,* 54 Ark. 645, 17 S. W. 7, that

the county court could not make a contract for the building of a bridge across the Arkansas river, at the city of Little Rock, without an appropriation having been first made therefor. In this case the court said: 'It is the policy of the act to require the concurring judgment of the levying court and of the county judge that a bridge should be built, before a contract for building it can be made. When the levying court makes an appropriation to pay for one, that signifies its favorable judgment, and the county judge may afterwards signify his by letting the contract. While we think that a contract cannot be made before there is an appropriation for it, we do not think that when an appropriation has been made the contract will be limited to the amount of the appropriation. When the levying court appropriates any sum for the work, that signifies their judgment that the work should be done, and the county judge may then proceed to contract for it without further consulting them, the only limitation upon his power being found in other directions.' We hold, upon this statute and the authority of this case, that, without some appropriation made therefor by the quorum of the levying court, the county judge has no power to let a contract to construct a turnpike road. Though he has jurisdiction to let such a contract, he must do so, if at all, within the limitations imposed by law upon the exercise of such jurisdiction. Otherwise there would be no restraint upon the extent of his power to contract, based upon the fact, simply, that he is invested with jurisdiction to make the contract. Such unlimited exercise of his jurisdiction to make such contracts might involve the county in hopeless bankruptcy, and the limitation is but a wholesome safeguard against the abuse of the power to make contracts binding the county. While the county court is invested with jurisdiction of roads and highways, to have them 'laid out, opened and repaired', by section 28, art. 7 of the Constitution, and by section 1173 of Sandels & Hill's Digest, conferring upon the county court exclusive original jurisdiction 'in all matters relating to county taxes, in all matters relating to roads,' etc., and by section 6746 of Sandels & Hill's Digest, still the extent and exercise of this jurisdiction are limited and controlled by law.

"The counsel for appellant contends that the validity of the contract with the county is *res adjudicata,* because the work under it was accepted and approved by the county, and allowances were made the contractor upon the work. But we think otherwise. There was no jurisdiction, without an appropriation first made, to make the contract, upon the part of the county, and

without such an appropriation it was void, and no adjudication could make it valid. If there was no power to make the contract, it was not, and could not be, ratified by the county's acceptance of the work done under it. * * * If this were not true, the county court would be above the law, and could make contracts without the authority of law, and then ratify them, and bind the county, and thus the law would be set at defiance. It is a well-settled rule of construction of grants by the Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication. * * * There is not only no express or implied power in the county court to make such a contract without an appropriation first made for the work to be done, but, as we have seen, there is a positive inhibition against it, in the statute quoted above."

In *Moss et al. v. Sugar Ridge Tp. of Clay County* (Ind. App.) 67 N. E. 460, it was held that "a municipal corporation does not become liable for a debt by substituting the fiction of an implied contract for an express contract, void for noncompliance with the terms of a statute not penal." See, also, *Berka v. Woodward,* 125 Cal. 119, 73 Am. St. Rep. 31; *Ohio, etc., Trust Co. v. Merchants', etc., Trust Co.,* 11 Humph. 1, 53 Am. Dec. 742; *Superior Mfg. Co. v. School Dist. No. 63,* 28 Okla. 293, 114 Pac. 328; *Boss v. Smith,* 12 Okla. 485.

The judgment of the lower court is affirmed.

All the Justices concur.