[No. 10278.  Department Two.  September 23, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Charles F. Craig, Appellant*, v. THE TOWN OF NEWPORT *et al., Respondents.*[1]

PLEADING—ANSWER—CONCLUSIONS—CERTAINTY.  In an action to compel a town to levy a tax to meet warrants issued in payment of a lease, an answer that the lease was for the purpose of securing a water supply without the sanction or authority of the qualified voters of the town, and that the lease was therefore void, pleads a fact and not merely a conclusion, and is sufficiently definite and certain to be proof against demurrer.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—WATER SUPPLY —SUBMISSION TO VOTERS.  Under Laws 1901, page 177, providing that the council shall by ordinance submit to the voters any plan for providing the town with water works, no expenditures for a municipal water supply can be incurred until the plan has been submitted to and received the assent of the voters of the town, whether the sum be within or without the first constitutional limit of indebtedness; and the legislature had power to so provide.

SAME—ULTRA VIRES CONTRACT—RATIFICATION—ESTOPPEL.  Where the town authorities had no authority to provide for a municipal water supply without submitting the plan to the electors, their action in leasing springs for that purpose without submitting the matter to a vote is *ultra vires*, and acceptance of benefits under the contract is not a ratification which would estop the city from disputing the indebtedness unlawfully incurred.

Appeal from a judgment of the superior court for Pend Oreille county, Miller, J., entered January 10, 1912, upon findings in favor of the defendants, dismissing an action in mandamus to compel the levy of a tax.  Affirmed.

*Belden & Losey*, for appellant.

*Sidney W. Rogers (Fred Trumbull*, of counsel), for respondents.

ELLIS, J.—This action was brought to compel the town of Newport, by mandamus, to levy a tax to create an indebted-

[1]Reported in 126 Pac. 637.

ness fund for the payment of sixteen warrants of $100 each, issued to one C. A. Carter in payment for a ninety-nine year lease of three acres of land situated in Bonner county, Idaho, and of the springs and water supply thereon.

There was no serious dispute as to the facts. The warrants were issued April 5, 1907, and were presented to the town treasurer and by him indorsed "not paid for want of funds," on May 8, 1907. Thereafter they were transferred to the relator for value. It sufficiently appears from the offer to lease, and from the recitals in the lease itself, that the purpose was to secure a new source of water supply for the town. It also appears that the town was at the time and still is supplied from another source by a private water system operated under a franchise, the town having the right under the franchise to purchase that system at any time within a certain period. It is admitted that the town council attempted to authorize both the securing of the lease and the issuance of the warrants in payment therefor merely by resolution. Neither of these matters was submitted for rejection or approval to the qualified voters of the town, by ordinance or otherwise. No ordinance was passed adopting any proposed plan or system, or declaring the estimated cost thereof, or submitting any plan or cost to the voters for ratification or rejection, at either a general or special election.

The answer of the defendants, after denying the principal allegations of the complaint, admitted the refusal to create an indebtedness fund for payment of the warrants, and set up as an affirmative defense the fact of the prior water supply and the optional right of the town to purchase the same, and alleged:

"That the leasing or purchase of the aforesaid water supply and tract of land from the said C. A. Carter and the purported issuance of the said warrants and the payment thereof, would be a needless, useless and uncalled for investment, outlay, and expenditure of the funds or money of the said town of Newport, and its citizens, and was without sanction or

authority of the qualified voters of said town; that the said tract of land and water supply attempted to be leased as aforesaid is without the state of Washington and lies within the county of Bonner and state of Idaho; and that the attempted purchase thereof by the council of said town was contrary to the law, ordinances of said town, and rules of said council, and void."

It was further alleged that, by reason of the foregoing, the agreement of lease, in consideration of which the warrants were issued, was *ultra vires*, null and void, and that the warrants were and are void and not binding upon the town. Prior adjudication of the matters in issue was pleaded as a second defense. A demurrer to these affirmative defenses was sustained as to the second, and overruled as to the first. A trial was had to the court, which found the facts substantially as hereinbefore set out, and thereon held the warrants void, and entered judgment for the defendant. The plaintiff has appealed.

The appellant contends that the demurrer to the first affirmative defense should have been sustained, on the ground that it stated no facts constituting a defense, but only conclusions. It stated, in effect, that the lease was for the purpose of securing a water supply, and that the leasing of the land and springs and the issuance of the warrants in payment were without the sanction or authority of the qualified voters of the town. This presented the ultimate fact which constituted the real issue in the case. Under the liberal rule imposed by the statute (Rem. & Bal. Code, § 307), this defense must be held sufficiently pleaded, in the absence of a motion to make the allegations more specific. The demurrer to this defense was properly overruled.

The only question upon the merits presented for our decision is well expressed in the appellant's brief as follows:

"It is admitted by the appellant that no election was called in this case and that no plans were submitted to the voters for adoption or rejection, and with these facts before the court the decision of this case becomes wholly a matter of law."

The appellant contends that, under Rem. & Bal. Code, § 7731, subd. 3, the council had full power to acquire the lease upon the property in question as a source of water supply for the town. That law was enacted by the legislature of 1890. At the same session, there was passed an act (Laws 1890, page 520, 1 Hill's Code, § 697), which has since been several times reenacted with amendments, and at the time of the transaction here in question, was in force, as amended by an act of 1901 (Laws 1901, page 177). The material part of the act so amended reads as follows:

"Whenever the city council or other corporate authority of any city or town shall deem it advisable that the city or town of which they are officers shall exercise the authority conferred upon them in relation to water works, sewerage, and works for lighting, heating, fuel and power purposes, or cable, electric or other railways, any or all thereof, the corporation shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed and declare the estimated cost thereof as near as may be, and the same shall be submitted for ratification or rejection to the qualified voters of said city or town at a general or special election. Ten days notice of the purpose to submit such system or plan to be voted on at such election shall be given in the newspaper doing the city or town printing by publication in each issue of said paper during said time: Provided, That, if the said city or town is to become indebted and issue bonds or warrants for such water works, sewerage system, lighting, heating, fuel or power works or railways, the said proposition and authority to become so indebted shall be adopted and assented to by three-fifths of the qualified voters of said city or town voting at said election, except as to the adoption or rejection of the system or plan of said improvements, which may be adopted by a majority vote. When such system or plan has been adopted, and no indebtedness is to be incurred therefor, the corporate authorities may proceed forthwith to construct and acquire the improvements or lands contemplated, making payment therefor, from any available fund."

In order to give effect to this statute, it must be construed as limiting the power of the council in the premises to

an initiation and submission to the qualified voters, and as vesting in the voters the sole power to adopt the scheme, authorize the contract, and incur the debt. In *State v. Pullman*, 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836, referring to these provisions, this court said:

"Under the provisions of §§ 696, 697, 1 Hill's Code, the law which was in force at the date of the contract, the town was prohibited from contracting for the extension of its water system without the approval of its citizens; and, where the extension or addition created an indebtedness, and in this case an indebtedness was contracted for,—it required the assent of three-fifths of the voters of the town. So that there can be no question but that the action of the town authority in entering into this contract was beyond the powers given it by law. In such case it is well settled that the plea of *ultra vires* may be interposed. In the discussion of this question, the distinction which is made between the application of the law to private corporations and its application to municipal corporations must be kept in mind, and this will eliminate from the discussion the most of the authorities cited by the appellant. This distinction is wisely maintained, for the authority of a private agent is known only to the agent and the principal, but the authority of the officers of a municipal corporation is a matter of public record, which is available to every one. The scope of their authority is embraced either in their charters or in the statutes of the state, and the limitation upon their powers is equally available to every one who desires to deal with them. Hence, if one, knowing their powers and limitations, sees fit to enter into illegal contracts, contracts which the law has forbidden for the protection of the taxpayers of the municipality, he has no right to complain when he is estopped from enforcing his illegal contract by a plea of *ultra vires* by the citizens of a municipality. If he knew the law and contracted in the face of that knowledge, he certainly ought not to recover; if he did not know the law as a matter of fact, he is subject to no greater hardship than has always been imposed upon the citizen, viz., the denial of the right to plead ignorance of the law on the theory that it was his duty to know it."

That opinion closes with the following unqualified statement:

"The power was conferred upon the voters. The city had authority only to put the machinery in motion which would elicit and determine the will of the voters. The discretion and authority were conferred upon the voters, and not upon the officers of the city."

In *Hansard v. Green*, 54 Wash. 161, 103 Pac. 40, 132 Am. St. 1107, 24 L. R. A. (N. S.) 1273, this court held that under this statute, in order to contract a valid bonded indebtedness for the purchase of water works, the whole plan or system, including the manner of payment therefor, must be submitted to the voters. Under the statute it is manifest that the same rule applies, and with equal force, when the debt is to be evidenced by warrants. See, also, *Thompson v. Sumner*, 9 Wash. 310, 37 Pac. 450; *Griffin v. Tacoma*, 49 Wash. 524, 95 Pac. 1107.

The appellant contends that the act of 1901, which we have quoted, has no application, unless it be shown that the indebtedness of the municipality had reached the limit of one and one-half per centum of the taxable property therein, fixed by § 6, art. 8, of the state constitution. But the language of the statute which we have quoted makes it plain that the adoption of the plan or system by a majority vote is necessary even when no indebtedness is to be incurred therefor. This can only mean that no expenditure can be made for water works, whether the sum be within or without the constitutional limit, until the plan has been submitted to and adopted by the people. The statute makes it equally plain that no debt can be incurred for the purposes mentioned without the assent of three-fifths of the qualified voters of the municipality, though it does provide that the amount of the debt so created shall not exceed five per cent of the taxable property, and be additional to all other outstanding indebtedness of the municipality created within constitutional limits. This last mentioned provision, however, neither adds to nor diminishes the power conferred by the statute, since the constitutional provision would fix the outside limit of the

debt, no matter how authorized or for what purpose incurred. The case of *Hazeltine v. Blake*, 26 Wash. 231, 66 Pac. 394, cited by the appellant, does not touch the question here under discussion. The sole question there considered was whether the first constitutional limit of one and one-half per cent had been reached, and the court only held that certain indebtedness incurred by the assent of the voters should not be included in the computation of indebtedness in determining that question. There was no reference to, nor construction of, the statute here involved, nor does it appear that the plan or system of sewerage had not previously been adopted by vote.

There is nothing in the constitutional provision referred to which prohibits the legislature from requiring the assent of the voters to the creation of indebtedness, even within the first constitutional limit of one and one-half per cent of the taxable property. That constitutional provision has been held to be a limitation upon the power, and not a grant of the right to incur indebtedness. *Childs v. Anacortes*, 5 Wash. 452, 32 Pac. 217. It follows that the right of the legislature to grant the power to incur indebtedness for a specific purpose carries with it the right to prescribe how the power may be exercised for that specific purpose, provided it does not intrench upon the limitation as to amount fixed by the constitution.

The appellant also contends that the town, having received the benefit of the contract, should be estopped to deny liability thereon. After a careful examination of the authorities, we held, in the case of *Turner Inv. Co. v. Seattle, ante* p. 201, 126 Pac. 426, that there could be no estoppel to deny liability where there was an absolute want of power to make the contract, and that the municipality could only be estopped to raise the defense of *ultra vires* where the officers had acted within their powers but had exercised these powers in an illegal way. Were the question a new one, the writer of this opinion would incline to the view that the case before us should fall within the latter class, but the question is no

longer an open one. We are precluded from that view by the decision to the contrary in the *Pullman* case, where as we have seen, this court held, in reference to the same power here involved, that, "The discretion and authority were conferred upon the voters, and not upon the officers of the city." Touching the question of estoppel and ratification, it was there said:

"It is claimed, however, by the appellant, that, having received the benefits of the contract which the city entered into, it ought to be estopped from denying its validity; also that it had ratified the contract by receiving the benefits. It is well established that the power to ratify is coextensive only with the power to contract, and that an act which was illegal for want of authority on the part of the contracting powers cannot be ratified. There has been a conflict of opinion on some branches of this question, but an investigation of the authorities will show, we think, that where courts have estopped municipalities from interposing the plea of *ultra vires*, and from escaping the responsibility of their acts, it has been where there has been a defect in the execution of the contracts, as in the issuance of bonds, etc., and not where there has been an absolute want of power on the part of the municipality to contract."

See, also, *Paul v. Seattle*, 40 Wash. 294, 82 Pac. 601, and *State ex rel. Spring Water Co. v. Monroe*, 40 Wash. 545, 82 Pac. 888. In each of those cases this court held contrary to the appellant's contention here, and in the latter the *Pullman* case was cited and the above language was quoted with approval.

The appellant seeks to point a distinction in the fact that the leasing of the land here involved was not a part of any elaborate plan to establish a water system for the town; but a reading of the record convinces us that the springs were being acquired to be used at some time as a new source of water supply, and we find no authority in the statute for the adoption of a new source of supply except by the assent of the voters. We find no warrant for holding that the council may, by mere resolution, do piecemeal what it may

not so do as an entirety. If it could adopt and purchase or lease a source of supply without plan or submission, it could, with equal show of reason, carry out as separate acts in the same way each detail of a new water system, and the statute would be nugatory. Until the legislature has authorized such a course, the courts are not at liberty to say that such a course may be followed.

In view of our former decisions, we are constrained to hold that the lease here in question was void *ab initio*, and that the warrants issued in payment therefor are invalid, because both the making of the lease and the issuance of the warrants without the assent of the voters were *ultra vires* of the town council. Under the same decisions, the town is not estopped to assert that defense.

The judgment is affirmed.

Mount, C. J., Fullerton, Morris, and Crow, JJ., concur.